## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Ashley Glascock

v.

Oscar M. Laserna et al.

May 3, 1993

Case No. L93–101

BY JUDGE WILLIAM H. LEDBETTER, JR.

The plaintiff, a five-year-old child born with multiple defects, brings this action against her mother's treating physician because of the physician's failure to warn her parents of potential birth defects. She seeks damages for her pain and suffering and for expenses incurred and to be incurred for her care and medical treatment.

In response, the physician demurred. He contends that the motion for judgment does not state a cognizable cause of action. Memoranda were filed and the court heard arguments on April 26, 1993. This opinion addresses the issue raised in the demurrer.

### Facts

Because the court is considering a demurrer, it is axiomatic that the facts alleged in the plaintiff's pleading and all reasonable inferences that can be drawn from them are deemed to be true. According to those allegations, Dr. Laserna treated Ashley's mother, Mrs. Glascock, throughout the pregnancy. During the course of treatment, Dr. Laserna took a medical history and conducted tests. A proper assessment of one of those tests, a sonogram, should have alerted Dr. Laserna to the need for additional testing for fetal malfunctions and should have motivated Dr. Laserna to inform Ashley's parents of the potential for birth defects. Instead, he reported that the sonogram was "normal," and he failed to inform Mr. and Mrs. Glascock of the potential for defects associated with Ashley's birth.

Ashley was born on November 27, 1987, by cesarean section with a number of congenital anomalies and deformities.

The plaintiff does not suggest that Dr. Laserna did or failed to do anything that directly caused the defects. Rather, Ashley complains that she has suffered damages as a result of Dr. Laserna's failure to provide reasonably accurate information to her parents regarding her prenatal condition so that her parents could make an informed decision regarding termination of the pregnancy. (This case is a sequel to *Karen J. Glascock et al. v. Oscar M. Laserna*, # L92–696, an action brought by the parents. That case was dismissed on a plea of the statute of limitations and is on appeal.)

## Decision

The Supreme Court of Virginia has categorized birth-related tort actions as follows.

First, a "wrongful birth" action is brought by parents on their own behalf seeking damages resulting from the birth of a defective child after a failed abortion or the failure of a physician to advise the parents of risk of genetic or birth defects and thereby permit them to make an informed decision whether to terminate the pregnancy.

Second, a "wrongful life" action is brought by a defective child seeking damages for the physician's failure to warn the parents of potential defects.

Third, a "wrongful conception" or "wrongful pregnancy" action is one maintained by the parents for damages arising from the negligent performance of a sterilization procedure or an abortion and the subsequent birth of a child whether the child is normal and healthy or defective.

*See Miller v. Johnson*, 231 Va. 177 (1986).

In *Naccash v. Burger*, 223 Va. 406 (1982), the court addressed the question whether a cause of action exists in favor of parents for the "wrongful birth" of a child. In that case, the defendant health care provider performed blood tests during the fourth month of pregnancy to determine whether the parents were carriers of Tay-Sachs disease. An employee of the health care provider mislabelled the father's blood sample. A positive result was erroneously reported as negative. Both parents actually were carriers. Consequently, the parents were never given accurate information concerning the condition of their unborn child so they could make an informed decision regarding abortion. The child was born with Tay-Sachs disease and died in less than three years. The parents sued the health care provider. The Court analyzed

the issue according to traditional tort — e.g., malpractice — principles. First, the Court found that the parents were owed a legal duty; i.e., the health care provider to whom the parents presented themselves for testing owed them a duty of reasonable care in handling the blood samples and in giving them reasonably accurate information about the test results so that the parents could know the condition or potential condition of the fetus and make an informed decision regarding abortion. Next, the Court found a breach of duty: the negligence in mislabelling the blood sample. Third, the Court examined causation and held that the negligent mislabelling led to an erroneous negative report which in turn caused the parents to decide to continue the pregnancy, rather than abort the fetus. Finally, the Court said, there must be "actionable injury." The court held that the erroneous report given the parents deprived them of the opportunity to accept or reject the continuance of the pregnancy and the birth of the fatally defective child, thereby causing direct, actionable injury. As for damages, the Court allowed the parents to recover damages for expenses incurred in the care and treatment of "reasonably foreseeable" defect or disease of the child and for emotional distress.

Thus, for the reasons explicated in *Naccash*, Virginia recognizes an action for "wrongful birth."

In *Miller v. Johnson, supra*, the Court considered two cases, each of which involved a mother suing a physician for damages from "wrongful pregnancy." In each case, the mother sought an abortion, the abortion failed, and subsequently, a normal, healthy child was born. As in *Naccash*, the Court said that whether a cause of action exists is a question to be determined in accordance with traditional tort principles. Under those principles, the court said, a physician who performs an abortion or sterilization procedure owes a legal duty of reasonable care to the patient. Thus, the patient can recover damages proximately resulting from the breach of that duty "as in any other medical malpractice action." On that basis, the Court held that an action for wrongful pregnancy could be maintained in Virginia. The balance of the opinion discussed the proper measure of damages.

As we have seen, Virginia has recognized two of the three categories of birth-related tort actions discussed in *Miller v. Johnson*. This case involves the third category, a "wrongful life" action, which the appellate court has not directly addressed.

In its discussion of birth-related tort actions in *Miller v. Johnson*, the Court said this about a wrongful life action: "Most courts have rejected this theory that the life of the defective child is worth less than the child's nonexistence." The opinion cited cases from Alabama, Idaho, New York, North Carolina, Texas, Wisconsin and Wyoming rejecting wrongful life claims. Since *Miller v. Johnson*, there seems to be no movement toward "cognizability" of an action for wrongful life. See Anno., 74 A.L.R. 4th 798 (1989).

Consistent with the Court's approach in *Naccash*, whether Ashley's claim constitutes a cognizable cause of action must be determined by resort to traditional tort principles.

Essential to the recognition of a cause of action in favor of Ashley is the existence of a legal duty owed her by Dr. Laserna; a breach of that duty; a causal connection between the breach of duty and the damage or injury; and an actionable, or direct, injury. These essential elements are not present here.

Ashley contends that Dr. Laserna's failure to inform her parents of the risks of birth defects deprived them (her parents) of the opportunity to accept or reject the continuance of the pregnancy and her birth. By extension, she argues, Dr. Laserna owed her, derivatively, the same duty. Stated differently, she says she was the beneficiary of this duty in that she had a right not to be born.

The court is of the opinion that this action is not compatible with traditional tort principles. Further, the court agrees with the defendant that such an action would call upon a jury to compute the value of the life of a defective child as against the child's nonexistence or as offset by the benefits of life itself. Life, with or without deformities, is more precious than no life at all. To entertain a cause of action premised on a contrary view is unacceptable.

## Conclusion

For the reasons explained, this court is of the view that a "wrongful life" action — i.e., an action brought by a child for the physician's failure to warn the parents of potential defects so that they can make an informed decision whether to abort the fetus — cannot be maintained in Virginia.

Accordingly, the demurrer will be sustained and the case dismissed.